## TOUHY v. SHANNON & LUCHS, Inc.

### No. 1250.

Municipal Court of Appeals
District of Columbia.

Argued Aug. 20, 1952.

Decided Sept. 8, 1952.

---

William T. Pace, Washington, D. C., for appellant.

Harry L. Ryan, Jr., Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Thomas Touhy was at one time a salesman employed by Shannon and Luchs, Inc., a real estate broker. He brought suit against the broker for one-half of a commission on a sale of property to a prospect of his. The broker defended on the ground that at the time of sale the plaintiff was no longer in its employ and that the sale was effected solely through the efforts of another of its salesmen. The trial judge having directed a verdict in favor of defendant, plaintiff has brought the case here for review.

The evidence disclosed that the plaintiff-salesman was sent to obtain and did obtain from the owner a listing on the property involved and through an advertisement interested a man named Smith who wished to assist his son and daughter-in-law in the purchase; that Mr. Smith was not then in a position to make the required $5,000 down payment; that a few days thereafter plaintiff secured a purchase contract from a couple named McKellar; that he nevertheless explained to Mr. Smith that the McKellar deal might fall through and asked Mr. Smith to keep in touch with him; that the McKellar deal did in fact result in a mutual rescission; that the salesman left Shannon and Luchs on November 8, 1950 and that on November 19 to 22 Mr. Smith, having by then raised the money, attempted to reach the salesman Touhy and learned that he was no longer employed at Shannon and Luchs; that he then went to their office and discussed the matter with the sales manager who turned him over to another salesman and such salesman prepared a contract and had it signed and was later paid the usual salesman's portion of the commission.

The primary question seems to have been what was the understanding between the parties, broker and salesman, as to what right the salesman would have to commissions on deals completed after he left the firm. The salesman testified that at the time he was severing his connection he had an "oral deal" with the vice-president and sales manager "that I would not take out any of the business that I had then with the office, and he, in turn, promised me that he would pay me for any deals that I brought to the office, or that had materialized after I left." Under questioning by the judge he repeated this twice and added that "in fact, if the property itself was sold to any purchaser that I had worked on I

was likewise to receive a commission, irrespective." Concerning this the sales manager was asked, "was any mention made by Mr. Touhy of any other dealings or negotiations which were still open and active in regard to this 6800 Piney Branch Road, other than the McKellar contract?" His answer was, "I do not recall. Certainly nothing specific was referred to because this contract was still in effect." He later stated the salesman was to be protected only for commissions earned up to the date of severance.

In directing a verdict for defendant-broker the trial judge ruled that the salesman was not the procuring cause of the sale; that "the controlling factor is whether he saw the customer last and brought about the favorable decision," and that there were no inducing efforts exerted by the plaintiff in the sale of the property to the ultimate purchasers.

A few days ago we had a somewhat similar situation before us, in Riddell v. Howar, D.C.Mun.App., 90 A.2d 925, 927. There as here a salesman had sued for his half of a commission received after he had left a brokerage firm. He too based his claim on an oral agreement with the broker. The broker admitted that an agreement had been made but said the terms thereof were not as stated by the salesman. The case was submitted to the jury on the sole question as to whether the salesman was the procuring cause of the ultimate sale. We ruled that it was error thus to narrow the submission to the jury; that "the rights of the parties depended on the agreement between them"; and that "It was for the jury to determine as a fact what the agreement was, what the parties intended thereby, and whether under such agreement the salesman had performed services entitling him to recover."

Here, as we have seen, the judge refused to submit any issue to the jury, and we must rule that such refusal constituted error. It was for the jury to say, on the conflicting versions of the parties, what their understanding was as to sales to be closed in the future with any of the plaintiff's prospects. It was also for the jury to decide, in the light of such understanding, whether the sale which was admittedly closed with the particular prospect here involved, should have been credited to the plaintiff.

Reversed and remanded with instructions to award a new trial.